OPINION OF THE COURT
Carol H. Arber, J.
Petitioner U.S. Healthcare, Inc. (USH) commenced this proceeding pursuant to CPLR article 78 for an order annulling the opinion and decision dated September 30, 1993 issued by the Superintendent of Insurance (Superintendent) on the ground that the decision exceeded the Superintendent’s statutory authority and was arbitrary and capricious. The Superintendent argues that the petition for review under CPLR article 78 is without merit and should be dismissed.
Petitioner, USH, has a certificate of authority as a Health Maintenance Organization (HMO) pursuant to article 44 of the Public Health Law. Petitioner provides health care services to persons who subscribe to one of petitioner’s plans and charges these persons a fixed rate premium (the premium).
Respondent, Salvatore R. Curíale, is the Superintendent of Insurance of the State of New York.
Pursuant to article 44 of the Public Health Law, HMOs, such as petitioner, are regulated within the State of New York by the Commissioner of Health. (Public Health Law § 4400 et seq.) In keeping with his supervisory function the Superintendent must review all contracts entered into between the HMO and its subscribers. (Public Health Law § 4406 [1].) Among other things, these contracts set the premiums which the HMO is permitted to charge its subscribers. In reviewing these contracts the Superintendent must apply the procedures and standards set out in article 43 of the Insurance Law. (Public Health Law § 4406 [1]; see also, Mem of Assembly Standing Comm on Health, 1976 NY Legis Ann, at 240.)
Article 43 of the Insurance Law, in turn, provides a detailed administrative scheme for review and approval of contracts *835 and the premiums sought to be charged. (Insurance Law § 4301 et seq.) Under this scheme, the HMO is required to apply to the Superintendent whenever it seeks a modification of its existing premiums and the Superintendent must approve any increase in premium rates before it can be imposed. Insurance Law § 4308 (c) (2) requires that before the Superintendent may approve any such application, a public hearing must be held and notice of the hearing must be published in at least two newspapers of general circulation. After the hearing has been completed, the Superintendent must then "render a written decision determining whether the [application] shall become effective as filed, shall become effective as modified, or shall be disapproved.” (Insurance Law § 4308 [c] [3].)
On or about June 30, 1993, USH filed an application with the Superintendent seeking an increase in premium rates for the period October 1, 1993 through September 1, 1994. Petitioner based this application upon a series of actuarial assumptions about health care costs and revenues. Pursuant to Insurance Law § 4308, a public hearing was held to review the application before officials of the New York State Insurance Department on August 17, 1993. During the hearing, no one from the New York State Insurance Department voiced any objection to the requested premium rate increase; USH was not given notice that anything but a premium rate increase would be reviewed. On September 30, 1993, the Superintendent issued a decision which disapproved USH’s request for a subscriber rate increase; in addition, the Superintendent directed that the rates then in effect be reduced by an average of 3.9%.
The Superintendent based his decision to roll-back USH’s rates on a variety of factors including that (1) USH’s actuarial assumptions were too conservative, (2) USH might receive the benefit of litigation settlements, and (3) USH’s projected rate of return exceeded the usual rate for similar Health Maintenance Organizations.
In this proceeding USH challenges and seeks to annul the Superintendent’s determination on the basis that it is contrary to law, arbitrary and capricious. Petitioner’s first assertion is that the Superintendent lacks power or authority to regulate changes in premium rates for profit-making HMOs.
In considering this argument, it is noteworthy that while petitioner argues that the Superintendent lacks authority, on *836 no less than eight separate occasions prior to 1993, petitioner made premium rate applications to the Superintendent pursuant to the procedures set forth in article 43 of the Insurance Law. The Superintendent rejected one of these applications and modified another. At no time during these prior applications and review procedures did the petitioner ever question let alone object to the Superintendent’s authority to regulate HMO premium rates. Only now, when this process has resulted in an unfavorable decision does petitioner attempt to make an issue of the Superintendent’s authority.
An examination of both the legislation and its history provides ample basis for concluding that the regulatory scheme was intended to cover organizations like USH.
Petitioner, as an HMO, is regulated by article 44 of the Public Health Law. (See, Public Health Law § 4400 et seq.) Part of this regulatory scheme requires that the "contract between a [HMO] and an enrollee shall be subject to regulation by the superintendent as if it were a health insurance subscriber contract. ” (Public Health Law § 4406 [1] [emphasis added].) Such "health insurance subscriber contracts” are, in turn, governed by article 43 of the Insurance Law, which applies to "contracts] to furnish medical expense indemnity.” (Insurance Law § 4301 [f].) Thus, the Superintendent must follow the procedures set forth in article 43 of the Insurance Law for regulating health insurance contracts.
In making the argument that the Superintendent may not apply the procedures of article 43 in regulating the HMO contract petitioner relies upon language in subdivision (2) of Public Health Law § 4406 which states that "[n]othing in this section shall be construed to require a health maintenance organization in its provision of a comprehensive health services plan to meet the requirements of an insurer under the insurance law.” (Emphasis added.) However, by its own terms, this language applies to the actual "provision” of services once a HMO and enrollee have entered into a contract; this language does not apply to the Superintendent’s regulation of that contract. The fact that this subdivision is located within section 4406 makes this point abundantly clear: subdivision (2) directly follows subdivision (1), which requires that the Superintendent regulate HMO contracts as if they were health insurance subscriber contracts. Thus, to read subdivision (2) as exempting HMO contracts, as well as the HMO’s provision of services, from the requirements of the Insurance Law would result in rendering subdivision (1) a nullity.
*837 In the legislative history of the statute, the Memorandum of the Assembly Standing Committee on Health accompanying the legislation noted the need to allow HMOs to provide services without being hampered by the strict requirements of the State’s Insurance Law; at the same time, the Memorandum states that the HMO contract itself must nonetheless be regulated by the State’s Insurance Department, rather than the Department of Health. (1976 NY Legis Ann, at 240.) Accordingly, the applicable law makes it clear the Superintendent has the authority to review and set HMO premium rates.
The Superintendent derives his authority to approve HMO premium rates from Insurance Law § 4308 (b), which states that the Superintendent may refuse such approval if the Superintendent finds that the premiums are: "excessive, inadequate or unfairly discriminatory.” Prior to making such a determination, section 4308 (c) requires that a public hearing be held. (Matter of Procaccino v Stewart, 25 NY2d 301 [1969].) This section specifically requires that the notice of the hearing shall set forth the purpose of the hearing.
Section 4308 (c) provides as follows:
"(c) (1) Except for an application pursuant to subsection (f) of section four thousand three hundred four of this article, no increase or decrease in premiums with respect to individual contracts issued pursuant to the provisions of such section shall be approved by the superintendent unless it is in compliance with the provisions of this subsection as well as other applicable provisions of law.
"(2) Prior to any such filing or application by or on behalf of a corporation for an increase or decrease in premiums for such contracts, such corporation, when directed by the superintendent, shall conduct a public hearing with respect to the terms of such filing or application. Notice of such hearing shall be published on three successive days in at least two newspapers having general circulation within the territory or district wherein such corporation seeking approval of the filing is authorized to do business. The date specified for the hearing shall be not less than ten nor more than thirty days from the date of the first publication of the hearing. The notice of hearing shall state the purpose thereof, the time when and the place where the public hearing will be held. The public hearing shall be held at a time and location deemed by the superintendent to be most convenient to the greatest number of persons affected by such filing. At such hearing any *838 person may be heard in favor of, or against, the terms of the filing or application.
"(3) Following the public hearing held pursuant to paragraph two of this subsection, a transcript of the testimony therein shall be submitted together with a rate filing or application, to the superintendent. Upon receipt of such filing or application by or on behalf of a corporation, the superintendent shall order that a public hearing be held with respect to the terms of such filing or application. Notice of such hearing shall be published on three successive days in at least two newspapers having general circulation within the territory or district wherein such corporation seeking approval of the filing or application is authorized to do business. The date specified for the hearing shall be not less than ten nor more than thirty days from the date of the first publication of the hearing. The notice of hearing shall state the purpose thereof, the time when and the place where the public hearing will be held. The public hearing shall be held at a time and location deemed by the superintendent to be most convenient to the greatest number of persons affected by such filing or application. A copy of such notice of hearing shall be forwarded by the superintendent by registered or certified mail to the principal address of the corporation seeking approval of such filing or application. The hearing may be continued or adjourned from day to day within the discretion of the superintendent. At such hearing any person may be heard in favor of, or against, the terms of the filing or application. After conclusion of the public hearing the superintendent shall render a written decision determining whether the filing or application shall become effective as filed, shall become effective as modified, or shall be disapproved.”
The purpose of the hearing requirement is to allow all affected parties to comment on the rate. (Matter of Medical Malpractice Ins. Assn. v Superintendent, 72 NY2d 753.) In the instant case, since the public hearing conducted by the Superintendent concerned only an application to increase the premium rates for USH, there was no opportunity for any party affected by such a reduction to participate in the process that is mandated by section 4308 (c). Since the Superintendent established a lower rate without giving petitioner the opportunity to oppose reduction in violation of the Insurance Law, the *839 determination is arbitrary and capricious.* (Matter of Story v Board of Educ., 19 AD2d 651 [2d Dept 1963]; Matter of Arcuri v City of Utica, 24 AD2d 534 [4th Dept 1965]; Matter of Angelo v Warden, 30 AD2d 652 [1st Dept 1968].)
Based upon the foregoing discussion, this matter is remanded to the Superintendent of Insurance, New York State Insurance Department, so that a public hearing can be held regarding the proposed decrease in the premium rates of USH following proper notice by the Superintendent.
It is further ordered that pending this hearing and determination the Superintendent and the Department of Insurance are restrained from enforcing any change in the current premium rates of USH.

 It is noteworthy that at the argument of this matter the Superintendent conceded that he had never before reduced a premium rate when an increase had been requested.